**NORTHERN PACIFIC RAILWAY COM-
PANY, Plaintiff,**

v.

**ZONTELLI BROTHERS, Inc., a corpora-
tion, Defendant.**

Civ. No. 1856.

United States District Court
D. Minnesota,
Fifth Division.

April 29, 1958.

770

M. L. Countryman, Jr., Earl F. Requa, and W. S. Lycan, Jr., St. Paul, Minn., for Northern Pacific Ry. Co.

Joseph B. Johnson (of Reavill, Jenswold, Neimeyer & Johnson), Duluth, Minn., for defendant.

DONOVAN, District Judge.

The instant case is before the court by reason of motions following verdict in a common law action for contribution. It is based on a previous tort action commenced by one Hulda C. Ryen, Special Administratrix of Orton Alfred Ryen, decedent, as plaintiff (hereinafter referred to as the widow) against Northern Pacific Railway Company (hereinafter referred to as Pacific), defendant. Therein the widow sued Pacific to recover $200,000 damages under the Federal Employers' Liability Act [1] (hereinafter described as the Act of Congress) on account of the death of her husband, the said decedent. In due course Zontelli Brothers, Inc. (hereinafter referred to as Zontelli), was made a third party defendant by order of the court.

Following joinder of issues Pacific settled with the widow for $42,500 and the instant action was instituted. Pacific had a verdict for $21,250 in the instant case. Zontelli has moved in the alternative for judgment or a new trial and, if denied, to amend the judgment to con-

1. 45 U.S.C.A. § 51.

form to state law, claiming contribution must be limited to one-half the maximum of $17,500 provided by the Minnesota Wrongful Death Act.[2]

A short statement of the facts will be helpful to an understanding of the issues, theory of trial and verdict in the case.

On October 18, 1956, decedent was employed by Pacific as a brakeman. He, together with the train and engine crews, consisting of a conductor, a fellow brakeman named Field, the engineer and fireman, was engaged as such, performing required railroad work on the Cuyuna Range in Minnesota. The day was clear, the roads dry. The train consisted of a Diesel engine and a caboose. The train movement, prior to and at the time and place of the accident, was backing up, with the caboose nearest the direction of destination. Decedent, together with Field, was standing on the end of the caboose farthest from the Diesel, and facing the direction of travel. The conductor was inside the caboose. The track was jointly used by Pacific and the Soo Line Railroad. The site of the accident was an intersection of a dirt road with said track, which road paralleled the track until it gradually turned towards and intersected the track. Zontelli's truck on said road was proceeding in the same direction as the train. The fireman was on the side of the Diesel nearest the truck. The engineer was on the opposite side of the Diesel cab. The driver of the truck was in his cab on the side nearest track and train. The engineer testified he sounded the engine whistle as customary, approaching the intersection of road and track (hereinafter referred to as the crossing.) The road forked, turning one way to the track and the other straight away. Zontelli's driver, on reaching said fork, turned towards the track and collided with the caboose. Ryen and the conductor were killed. Field lost a leg. The truck driver lived to testify in the instant case that he heard no whistle or approach of the train as he sat in the cab of the truck before the collision.

It is undisputed that decedent and Pacific, prior to and at the time of the collision, were subject to the Act of Congress, and that the suit by the widow against Pacific was duly commenced, at issue and settled during the pendency of that action.

The trial of the instant case consumed several weeks. It was thoroughly and ably presented. The customary motions at trial were made and ruled upon. The requests to charge the jury and the court's proposed instructions, together with special interrogatories to be submitted to the jury, were worked out by court and counsel in chambers. The interrogatories and answers returned by the jury read as follows:

"Upon arriving at your verdict in this case please answer the following questions 'Yes' or 'No':

"1. (a) Was John P. Pirner, the driver of defendant's truck, negligent?

"Answer; Yes.

"(b) If he was negligent, did such negligence proximately contribute to the cause of the collision?

"Answer: Yes.

"2. (a) Was the brakeman Orton Alfred Ryen negligent?

"Answer: No.

"(b) If he was negligent, did such negligence proximately contribute to the cause of the collision?

"Answer: ———

2. 37 Minnesota Statutes Annotated, § 573.-02 which reads:
"Subdivision 1. When death is caused by the wrongful act or omission of any person or corporation, the trustee appointed as provided in subdivision 2 may maintain an action therefor if the decedent might have maintained an action, had he lived, for an injury caused by such wrongful act or omission. The ac-

tion may be commenced within three years after the act or omission. The recovery in such action in such an amount as the jury deems fair and just in reference to the pecuniary loss resulting from such death, shall not exceed $17,500 and shall be for the exclusive benefit of the surviving spouse and next of kin proportionate to the pecuniary loss severally suffered by the death. * * *"

"3. Was the settlement made by the Northern Pacific Railway Company fair, just and provident?

"Answer: Yes.

Albin B. Iverson
"(Foreman)

"Dated this 10th day of January, 1958."

Defendant's motions challenge the verdict and judgment for plaintiff on the grounds:

1. The verdict and judgment are contrary to (a) the evidence; (b) the law.

2. Plaintiff failed to carry its burden of proof.

3. The trial court erred in certain rulings and instructions.

4. In any event, the judgment should be altered and amended.

*1. (a) Is the verdict contrary to the evidence?*

■ Contending it is, defendant questions the weight and sufficiency of the evidence. The court must view the evidence in a manner most favorable to the prevailing party and must accept as true all facts which the evidence and inferences therefrom reasonably tend to prove. It must be assumed that the jury resolved all conflicts in the evidence in favor of Pacific. For instance, the testimony of the engineer relative to the blowing of the Diesel engine whistle no doubt was accepted by the jury, as opposed to the negative testimony of the truck driver in that respect. The respective speeds of train and truck and similar conflicts in the testimony are assumed to have been resolved in favor of the prevailing litigant.[3]

■ Zontelli's truck driver was familiar with Pacific's track, the use thereof by trains, and the crossing in question. Had the truck driver looked, he could have seen the train. Had he looked and seen, he could have stopped before the collision. Clearly a verdict and judgment for plaintiff are justified by the evidence. See footnotes 12 and 13, infra.

*1. (b) Is the verdict contrary to law?*

■■ Zontelli contends the claimed clash between the Act of Congress pursuant to which settlement was effected and the Minnesota Wrongful Death Act, precludes contribution. With this conclusion I cannot agree. In this common law diversity action the Minnesota law is applicable.

■ Factually and legally, the widow had a choice of two remedies, i. e., to sue Pacific (as she did) with damages unlimited, or, in the alternative, to sue Zontelli under the Death Act and be limited to $17,500 damages. Having sued and settled pursuant to the Act of Congress, Pacific had one of three remedies to choose from: indemnity, subrogation or contribution. Confronted with the possibility of a large plaintiff verdict and no doubt realizing courts favor settlements, Pacific decided in favor of the doctrine of contribution, which has its genesis in equity. It may now be enforced in actions at law.[4] The general rule of negligence is that injury or death, to be actionable, must be within the risk of harm created by a defendant's wrongful conduct. In the instant case it is interwoven in the federal and state statutory remedies, which are referred to in footnotes 1 and 2, supra. The Death Act will not be construed as defeating the common law right to contribution.[5] The

---

3. Railway Express Agency, Inc., v. Mackay, 8 Cir., 181 F.2d 257, 259, 19 A.L.R. 2d 1248; Waylander-Peterson Co. v. Great Northern Ry. Co., 8 Cir., 201 F.2d 408, 411, 37 A.L.R.2d 1399; Mounds Park Hospital v. Von Eye, 8 Cir., 245 F.2d 756, 759; Lyon v. Dr. Scholl's Foot Comfort Shops, Minn., 87 N.W.2d 651, 654.

4. Duluth, M. & N. R. Co. v. McCarthy, 183 Minn. 414, 236 N.W. 766; Merrimac

Mining Co. v. Gross, 216 Minn. 244, 12 N.W.2d 506; United States v. Goodson, 8 Cir., 253 F.2d 900.

5. Texas & Pac. R. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 437, 27 S.Ct. 350, 51 L.Ed. 553; Heitman v. Lake City, 225 Minn. 117, 30 N.W.2d 18; Employers Mut. Cas. Co. v. Chicago, St. P., M. & O. Ry. Co., 235 Minn. 304, 310, 50 N.W. 2d 689.

common liability of Pacific and Zontelli is so demonstrably obvious that denial thereof is futile.[6]

Under the Act of Congress and the Minnesota Death Act, the common denominator is "negligence." In the one it is comparative. In the other it may constitute a bar to recovery. The distinction is one of degree.

At trial of the instant case Zontelli was given the right to complete vindication if decedent was proved guilty of contributory negligence as a proximate cause of the collision. That the questioned choice of remedies exists under federal and state law in my opinion is immaterial.[7]

Minnesota law supports the verdict and judgment in the instant case. That law establishes joint liability of Pacific and Zontelli on acccunt of the death of Ryen by reason of the great preponderance of the evidence, arising out of their concurrent negligence as common tort feasors. By their inseparable tortious conduct, common liability of both exists.[8] Zontelli's truck collided with Pacific's train, causing the death of Ryen, and thereby justifies contribution in the instant case. As indicated, infra, Zontelli's negligence was a major proximate cause of the death sued for.[9]

■ Contribution is an equitable practice, where the joint or concurrent conduct of the participants leads directly to and causes the injury or death at a time when the parties are not conscious of intentional wrongdoing, but which nonetheless creates the common tort. The doctrine is founded on principles of equity and material justice.[10]

The contention of defendant that contribution is not available to Pacific because the Act of Congress and the State Death Act are distinct and different in their statutory concept is not persuasive. The third party practice permitted by court rule and which was first contemplated by Pacific before abandonment thereof for settlement, and the action for contribution that followed emphasizes the alternate available remedies under the facts and circumstances. As the Minnesota court said in a like case [11]:

"It is apparent that the ground of liability of the two defendants is different. One may be liable or both may be liable. The liability of the depot company is dependent upon the federal Employers' Liability Act; that of the railroad company upon the common law. There is nothing significant in this."

■ Review of the trial court's notes is convincing that Zontelli by ownership and operation of the truck, was guilty of negligence as a matter of law, and that such negligence was a proximate cause of the collision and its consequences.

■ The fact that Pacific occupied and used its track, whether by grant, lease or sufferance, is not significant or material. The site of the accident was a railroad track (of a common carrier in interstate commerce), with a traveled road being used by Zontelli at the time of the accident. The collision occurred at the railroad grade crossing. The controlling law [12] under the facts of the instant case is Anderson v. Great Northern Railway Co., 147 Minn. 118, at pages 120, 121, 179 N.W. 687, at pages 688, 689, in which the court said:

6. Waylander-Peterson Co. v. Great Northern Ry. Co., supra.

7. Loc-Wood Boat & Motors, Inc., v. Rockwell, 8 Cir., 245 F.2d 303, 307, 311.

8. Dunnell's Minn. Digest §§ 8186, 8186a, 8187; Prosser on Torts (2d Ed.), Chapter 8, Sec. 46, pp. 233, 234.

9. Krtinich v. Duluth, M. & I. R. R. Co., 206 Minn. 106, 287 N.W. 870; Lundstrom v. Giacomo, 194 Minn. 624, 261 N.W. 465;

Chicago, M., St. P. & P. R. Co. v. Slowik, 8 Cir., 184 F.2d 920, 923, 924.

10. Duluth, M. & N. R. Co. v. McCarthy, supra; United States v. Goodson, supra.

11. Doyle v. St. Paul Union Depot Co., 134 Minn. 461, 159 N.W. 1081, 1082.

12. Chicago, St. Paul, Minneapolis & Omaha Ry. Co. v. Heyda, 8 Cir., 191 F.2d 944, 947, 948.

"A railroad grade crossing is a place of danger, and the track itself is a warning.

"A traveler about to cross is charged with notice of the probability of approaching trains at all times, and must look and listen, but need not necessarily halt, when trains are neither seen nor heard. He must alertly use his sight and hearing to discover their approach.

"Within reasonable limits he may act upon the assumption that due care will be exercised in the management of trains and in giving crossing signals.

"When the evidence conclusively shows that a colliding train must have been visible from the point where the traveler should have looked and listened a conclusive presumption arises, either that he failed to look and listen, or else heedlessly disregarded the knowledge thus obtained, and negligently encountered obvious danger.

"The failure to give the usual crossing signals may justify a traveler in relaxing somewhat in his vigilance, but does not excuse him from looking and listening before going upon the track.

\*      \*      \*      \*      \*      \*

"\* \* \* If he [the driver of an automobile] does not get an unobstructed view of the track until he is close to it, it is still more imperative that he should look before attempting to cross."

■ The train had the right of way and it was the duty of Zontelli's driver to yield the right of way. Pacific's engineer had a right to assume the truck driver would so yield and get out of the way before colliding with the train.[13]

The train was confined to the rails by flanged wheels. The truck on the dirt road could turn right or left. The day was clear. The road was dry. There were no distracting circumstances. The fireman on Pacific's Diesel could see the truck, and assumed under the law the truck would stop. Had the truck driver taken the precaution required of him by Minnesota law, he would not have negligently created the accident because he could have stopped in ample time to avoid the collision, according to the speed he testified he was traveling. In doing what he did, he was the servant and agent of Zontelli and as such was responsible for what happened to Ryen.

In the light of the foregoing, the court is now of the opinion that it should have directed a verdict for plaintiff in accord with the motion made therefor. The defendant's alternative motion for judgment or a new trial must be, and the same is denied.

The result reached makes unnecessary discussion and consideration of the errors assigned by plaintiff, other than to add that the charge of the court must be viewed in its entirety and not out of context.[14]

■ During the trial and at oral argument of defendant's motions herein the court entertained serious doubt that the verdict could exceed the sum of $17,500 (which is the maximum set forth in 37 Minnesota Statutes Annotated, 573.02, supra), but is now convinced, upon further study, that contribution should be in the amount arrived at in the jury verdict.

Defendant's remaining motion to alter or amend the judgment is denied.

It is so ordered.

Defendant is allowed an exception.

13. Asklund v. Chicago Great Western R. Co., 176 Minn. 214, 223 N.W. 95; Hoyum v. Duluth, Winnipeg & Pacific Ry. Co., 203 Minn. 35, 39, 279 N.W. 729, 731; Krtinich v. Duluth, M. & I. R. R. Co., supra.

14. Thomas v. Mueller, Minn., 88 N.W.2d 842, 847.