**Curtis C. GOODSON, Executor of the Estate of Louis W. Hill, Deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 2800.**

United States District Court
D. Minnesota, Third Division.

**May 4, 1957.**

Doherty, Rumble & Butler, by Francis D. Butler and Irving Clark, St. Paul, Minn., for plaintiff.

George E. MacKinnon, U. S. Atty., St. Paul, Minn., Sheldon J. Gitelman, Atty., Department of Justice, Washington, D. C., for defendant.

DONOVAN, District Judge.

By this action plaintiff seeks a refund of federal estate taxes. Issue was joined by answer, and the case was submitted on stipulated facts. The parties will be referred to as plaintiff and defendant.

Plaintiff is the executor of the estate of Louis W. Hill, herein referred to as the testator, who at the time of his death on April 27, 1948, was a resident of Minnesota. His will and codicils will be termed "the will". By his will the testator bequeathed certain household items to his children, and the residue of his estate he left to the Louis W. and Maud Hill Family Foundation, an exempt charity. It is undisputed that the testator's homestead, which he held in joint tenancy with his wife and four children, and the property contained in the North Oaks Farm and Bond Trust (an inter vivos trust created by the testator in 1925) were includible in his gross estate for estate tax purposes. No provision regarding the payment of the estate tax was contained in the 1925 trust instrument nor in the transfer of the property in joint tenancy.

The third codicil of the testator's will contained the following provision regarding the payment of the estate tax:

"Heretofore I have made certain inter vivos transfers of property to my children and others and it is my desire that any and all estate taxes, inheritance taxes, gift taxes, or other transfer taxes which may be due at the time of my death or which may accrue by reason of my death on account of any such transfers, whether heretofore or hereafter made, shall be paid out of the property so transferred and shall not be paid out of the property passing under my will; provided, however, that the taxes on the transfer of the

personal property to my children provided for in said Second Codicil shall be paid out of such property or by the recipients thereof."

An estate tax return for the estate of Louis W. Hill was duly filed showing a tax due of $5,868.04 which was paid by the taxpayer. The tax resulted from the passing of certain of the chattels under the will and also the passing of property which the decedent had held in joint tenancy with others but for which the decedent had contributed the purchase price. Thereafter, the Commissioner of Internal Revenue, hereafter referred to as the Commissioner, assessed a deficiency for federal estate taxes against the estate in the sum of $577,102.52, plus $39,978.18 in interest, which was paid by the taxpayer as executor of the estate. The deficiency resulted in part from the inclusion in the decedent's estate of the property contained in the North Oaks Farm and Bond Trust. The inclusion of the jointly held property and the trust corpus in decedent's taxable gross estate has not been contested and is not contested here.

The Commissioner also determined that the estate taxes on the chattels and on the inter vivos transfers would be chargeable against the residue which went to charity and thereby reduce the amount going to charity and thus reduce the charitable deduction from decedent's gross estate. This latter determination increased the total tax and led to the controversy here. The plaintiff paid the whole deficiency and filed claim for refund of that part that was based on the determination that the whole tax was to be borne by the residue under the will, without right of contribution from the recipients of the chattels, the homestead and the farm trust. The Commissioner conceded that the legatees of the chattels were chargeable with the taxes thereon and made a partial refund. The Commissioner, however, does not concede that the recipients of the inter vivos transfers were chargeable with the taxes

attributable to such transfers and that is the issue here.

Plaintiff contends that the deduction from the gross estate for the bequest to charity should be $9,619,579.43 instead of $9,036,608.87 as allowed by the Commissioner. In support of his contention plaintiff argues (1) the recipients of the inter vivos transfers were obligated to pay the estate taxes attributable to such transfers by intent of the testator and applicable law and (2) if they were so obligated, the charitable deduction is correspondingly increased.

The primary question which must be decided is whether the joint tenants and trust beneficiaries were legally obligated to pay the share of the estate tax attributable to the joint tenancy and trust property. If they were so obligated, the tax was not payable out of the residue, and the estate was entitled to a deduction for the entire amount of the bequest to charity and not for the amount of that bequest reduced by the estate tax as the Commissioner determined.

■ The important feature of the case as to where this legal obligation lies is governed by Minnesota law, for it was the intent of Congress that the federal estate tax should be paid out of the estate as a whole and that the applicable state law as to devolution of property at death should govern the distribution of the remainder and the ultimate impact of the federal tax. Riggs v. Del Drago, 317 U.S. 95, 97, 98, 63 S.Ct. 109, 87 L.Ed. 106.

■ The government contends that the testator used merely precatory language (the word "desire") in the third codicil in referring to the payment of the estate tax by the beneficiaries of the trust and the joint tenants and so did not intend to place any legal obligation on them to pay their pro rata share. The word "desire", however, does not necessarily show a precatory intention. In re Estate of Hasey, 192 Minn. 582, 257 N.W. 498. The word "shall" (which indicates some authority or compulsion on the speaker's

part)[1] rather than "will" (which would have denoted futurity only)[1] was used in connection with "desire", and this indicates a command rather than a mere wish. A more clearly mandatory clause could have been used, but the failure to use it may well have been due to some hesitation about the testator's legal power to impose a share of the estate tax on them rather than to lack of desire to do so. If the testator had no desire to impose a legal obligation, language that was definitely precatory would have been used. For these reasons the court is of the opinion that the testator probably intended to impose a legal obligation if he had the power to do so.

■ The government further contends that the testator had no legal power to impose a pro rata share of the estate tax on the joint tenants and trust beneficiaries. There is no holding on this point in Minnesota, but there are two dicta that indicate that the Minnesota court will hold that property transferred inter vivos and included in the donor's estate for estate tax purposes can be charged with the payment of a pro rata share of the estate tax by a later testamentary provision. The first of these is in the case of Gelin v. Gelin, 229 Minn. 516, 40 N.W.2d 342. No inter vivos trusts were involved in the Gelin case, but joint tenancy properties were. There was no expression of intent by the testator regarding the payment of the estate tax, and the court followed the majority common law rule that in the absence of an expression of intent by the testator the burden of the estate tax will be borne by the residue. There is a clear implication in this opinion that an expression of intent by the testator to charge the joint tenancy property with its pro rata share of the estate tax would have been given effect by the court. Another dictum to the same effect occurred in First National Bank of Miami v. First Trust Co. of St. Paul, 242 Minn. 226, 64 N.W.2d 524, 526. The question presented to the court in the last cited case was whether a Florida administrator c. t. a. who had paid the federal and Florida estate taxes out of assets of the Florida probate estate could recover a pro rata share of those taxes from the trustee of an inter vivos trust created in Minnesota. The court stated that:

"The question presented is whether applicable Florida law requires a pro rata apportionment of federal and Florida estate taxes amongst owners of assets against the transfer of which such taxes are assessed and, if so, whether such law will be applied here where an apportionment of estate taxes cannot be made unless by specific direction of the transferer or testator. We must also determine whether the last will of Charles L. Peet made in Minnesota while he was a resident of Florida by implication contained such a direction and, if so, whether the trust property here would be subject to such a direction.

\* \* \* \* \* \*

"It is clear that, if Minnesota law is to apply as to the federal estate tax, the burden thereof must fall upon the residue of decedent's estate in the Florida probate proceedings rather than upon property transferred under the trust created October 23, 1936, unless decedent's specific direction to the contrary can be established. In re Estate of Gelin, 229 Minn. 516, 40 N.W.2d 342."

The court held that Minnesota law governed the question of apportionment as regards the inter vivos trust but did not find any direction for apportionment in the will, and, therefore, there was no holding that the trust property could be subjected to such a direction. In the second paragraph above, however, there is the same dictum that appeared in the Gelin case, and it is strengthened here by the fact that in the earlier paragraph the court referred specifically to the question whether the trust property could be subjected to such a testamentary direction.

---

1. Webster's Collegiate Dictionary, fifth edition.

■■ In ascertaining the Minnesota law on this question the federal court is not bound by dicta. New England Mutual Life Ins. Co. v. Mitchell, 4 Cir., 118 F.2d 414, certiorari denied 314 U.S. 629, 62 S.Ct. 60, 86 L.Ed. 505; Carroll v. Carroll, 16 How: 275, 14 L.Ed. 936. Yet while dicta are not conclusive evidence of the law of any state, considered dicta, as distinguished from mere obiter dicta, should not be ignored, Badger v. Hoidale, 8 Cir., 88 F.2d 208, 109 A.L.R. 798, and are even entitled to great weight. Yoder v. NuEnamel Corporation, 8 Cir., 117 F. 2d 488; Blue Valley Creamery Co. v. Consolidated Products Co., 8 Cir., 81 F.2d 182; National Bank of Oxford v. Whitman, C.C.S.D.N.Y., 76 F. 697; Hawks v. Hamill, 288 U.S. 52, 53 S.Ct. 240, 77 L. Ed. 610. In the Yoder case the court said that "Any convincing manifestation of local law, having a clear root in judicial conscience and responsibility, whether resting in direct expression or obvious implication and inference, should accordingly be given appropriate heed". [117 F.2d 489]

The dicta we have considered here are dicta which the Minnesota court considered, and, therefore, they are entitled to great weight and should be followed unless it can be shown that there is good reason why the Minnesota court would not follow them when presented with the issue. Counsel for the government argues that the Minnesota court would hold otherwise because charging an inter vivos trust in this manner is equivalent to altering the terms of a trust without a reserved right to do so, which obviously is not permitted by Minnesota law. However, it is probably not true that these two things are equivalent. A donor cuts off his rights of ownership in the property he has given away so that there is no longer a basis for permitting him to revoke or amend without a reserved right to do so, but when such property is included in his estate for tax purposes on the ground that he has retained some interest or his death remains significant as regards this property, it would seem that he also has enough interest in or

connection with the property to provide a basis for his right to determine by a testamentary provision what property shall bear the estate tax burden attributable to his inter vivos gifts. It is generally believed that the courts will uphold this right. Fleming, Apportionment of Federal Estate Taxes, 43 Illinois Law Review 153, 1948, pages 167, 168; Karch, The Apportionment of Death Taxes, 54 Harvard Law Review 10, 1940, pages 44, 45. In view of these Minnesota dicta and the reasonableness of such a rule it must be concluded that under the law of Minnesota as it is or is likely to be the testator had the legal power to impose a share of the estate tax on the joint tenancy and trust property.

■■ It is difficult to see any merit at all in the third argument in which the government contends further that even though the joint tenants and trust beneficiaries were legally obligated to pay the share of the tax attributable to the joint tenancy and trust property, the executor should not be permitted to take the full charitable deduction. One reason given is that the tax has been paid out of the residue, which will not be reimbursed and which will not give this amount to the charitable foundation, and another reason given is that there will be a double deduction, for the estate will get the full charitable deduction, and the inter vivos donees will take a deduction for the same amount of contributions to charity in the years when they transfer their beneficial certificates in the estate tax trust to the foundation.

Suffice it to say that this concern over the possibility of a double charitable deduction is unfounded. The inter vivos donees are legally obligated to pay the share of the estate tax attributable to the joint tenancy and trust property, and payment of that amount by them will certainly not qualify as a contribution or gift to charity under section 170 of the 1954 Internal Revenue Code, 26 U.S.C.A. § 170. Nor is there any other reason why payment directly to the foundation rather than to the executor should disqualify the estate for the full charitable deduction.

The test is whether the tax was payable out of the residue.[2] Since under Minnesota law it was not payable out of the residue, the estate is entitled to a deduction for the entire amount of the residuary bequest to charity regardless of the fact that the tax was assessed against the executor and paid by him out of the residue.

It is so ordered.

Plaintiff may submit Findings of Fact, Conclusions of Law, Order for and form of Judgment.

Defendant is allowed an exception.

2. The pertinent part of section 812(d), Internal Revenue Code of 1939, 26 U.S.C.A. § 812(d), is as follows: "If the tax imposed by section 810, or any estate, succession, legacy, or inheritance taxes, are * * * payable in whole or in part out of the bequests, legacies, or devises otherwise deductible under this paragraph, then the amount deductible under this paragraph shall be the amount of such bequests, legacies, or devises reduced by the amount of such taxes".